The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Pamela T. Young and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for minor modifications. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times herein.
3. Defendant was a duly qualified self-insured employer at all relevant times herein with North Carolina Riscorp National Insurance Company as its servicing agent.
4. The parties stipulated that the plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant on 6 April 1997, which has been accepted as compensable pursuant to Industrial Commission Form 63 executed on 29 April 1997.
5. The plaintiff's average weekly wage per Industrial Commission Form 18 was $375.00, yielding a compensation rate of $250.13.
6. The parties stipulated to the plaintiff's medical records from Cabarrus Memorial Hospital, Cabarrus Physical Therapy, Inc. and from Dr. James G. Hendrix of the Orthopaedic Group of Concord, P.A.
***********
Based upon all the evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 40 year old high school graduate. Plaintiff was a licensed Certified Nursing Assistant and had worked previously as a CNA until his certification lapsed in January of 1998. Plaintiff's work history also included working as an operating room assistant for 11 years at Cabarrus Memorial Hospital.
2. On 20 May 1996, plaintiff was hired by the defendant as an oxygen tank delivery person. Plaintiff's job duties included delivering oxygen tanks to nursing homes and to individuals. After three to four months, plaintiff became the defendant's office manager. The plaintiff's duties included taking orders, handling complaints and making only occasional deliveries.
3. On 6 April 1997 plaintiff was working for the defendant as office manager, but was delivering an oxygen tank to a nursing facility, when he attempted to move a 50 to 100 pound oxygen tank, his body twisted and he felt a sharp pain in his lower back. This constituted a specific traumatic incident of the work assigned and an injury by accident and is compensable under the Workers' Compensation Act. Additionally, by Form 60 filed with the Industrial Commission on 12 June 1997, defendant accepted liability for the 6 April 1997 accident.
4. As of 6 April 1997, plaintiff was earning $8.00 per hour and worked an average of 40 hours per week. Per the Industrial Commission Form 18, plaintiff earned an average weekly wage of $375.00 yielding a compensation rate of $250.13.
5. Plaintiff presented to Cabarrus Memorial Hospital emergency room on 7 April 1997 for his admittedly compensable 6 April 1997 injury by accident to his back. At the emergency room, plaintiff complained of lower back pain radiating into his right leg and also reported two prior back injuries. Plaintiff was diagnosed with low back pain, prescribed medication and referred for an orthopaedic evaluation.
6. Plaintiff returned to Cabarrus Memorial Hospital on 11 April 1997 reporting that his symptoms had not improved and again reporting lower back pain radiating into his right leg. Plaintiff was restricted from any heavy lifting or strenuous activity for three days and again referred for an orthopaedic evaluation.
7. Plaintiff presented to Dr. James Hendrix, an orthopaedic physician, on 21 April 1997. Dr. Hendrix initially diagnosed plaintiff with low back strain, treated plaintiff conservatively and recommended physical therapy.
8. Plaintiff returned to Dr. Hendrix on 1 May 1997 and reported that his symptoms had improved. Dr. Hendrix released plaintiff to return to work with no lifting above five pounds and limited bending.
9. Plaintiff tried to return to work with defendant, but defendant told plaintiff there was no work available for him within his medical restrictions.
10. Plaintiff returned to Dr. Hendrix on 15 May 1997 and Dr. Hendrix determined incorrectly that plaintiff had reached maximum medical improvement and improvidently released plaintiff to full duty. On 20 May 1997, the first day that defendant would permit him to return to work plaintiff returned to work for defendant for four hours. He quit because defendant changed his working conditions, became hostile towards him, told him that he was being removed from his office duties and returned to the full-time delivery work he had performed during the first three to four months of his employment and questioned the legitimacy of his back injury. When plaintiff walked off the job his back was very sore and the four hours that he spent on the job were painful.
11. Nine days later, on 29 May 1997, plaintiff was hired by Foster Animal Hospital as a kennel helper. Plaintiff's job duties at the animal hospital included bathing, lifting and caring for cats and dogs, which sometimes weighed up to 15 pounds. Plaintiff earned $6.40 per hour for 40 hours per week.
12. While working for Foster Animal Hospital, plaintiff's low back pain intensified and he was unable to perform his job as kennel helper.
13. Plaintiff presented to Dr. Hendrix on 18 June 1997 complaining of right calf pain and worsening back pain. Dr. Hendrix recommended an MRI, which was performed on 24 June 1997 and revealed a relatively large prominent central L5-S1 disc protrusion. Dr. Hendrix recommended that plaintiff undergo an epidural steroid injection.
14. As a result of plaintiff's return visit to Dr. Hendrix on 18 June 1997 due to his continuing pain and radicular symptoms resulting from his admittedly compensable injury by accident of 6 April 1997, and after reviewing plaintiff's subsequent MRI, Dr. Hendrix determined that plaintiff had been and remained symptomatic from 6 April 1997 through 18 June 1997 and was not at maximum medical improvement (MMI) and that his earlier determination of MMI had been in error.
15. Dr. Hendrix opined, and the Full Commission finds as fact, that the MRI findings are more than likely related to plaintiff's lifting accident of 6 April 1997. Dr. Hendrix further opined, and the Full Commission finds as fact, that plaintiff's disk protrusion and symptoms after 12 June 1997 were more than likely related to the 6 April 1997 injury by accident and that the lifting that plaintiff was required to perform with the animals at Foster Animal Hospital was not the reason for his disk herniation.
16. Plaintiff last worked on 18 June 1997 until he was hired temporarily in January of 1998 for one month as a sitter/companion for an elderly, home-bound patient. Plaintiff earned about $400.00. However, plaintiff could not continue this job because it required long walks, cooking and dishwashing which plaintiff could not perform due to his back pain, and because the patient moved in with a relative. Between June of 1997 and January of 1998, plaintiff applied for other jobs with a cleaners and at Five Oaks Nursing Center, where he applied for several jobs other than as a CNA. Plaintiff has made reasonable efforts to find a job but has been unable to do so because of his compensable injury and has been unable to earn the wages he was earning at the time of his injury, also because of his compensable injury.
17. As a result of his injury of 6 April 1997, plaintiff has been incapable of earning wages with the defendant or in any other employment since at least 18 June 1997 except as aforesaid. Plaintiff's inability to find or hold other employment of any kind or other employment at a wage comparable to that earned prior to his admittedly compensable injury by accident is due to his 6 April 1997 work-related admittedly compensable injury by accident rather than any refusal to return to work for the defendant on 20 May 1997. Defendant's maltreatment of and reassignment of plaintiff on 20 May 1997 was in retaliation for plaintiff's pursing his Workers' Compensation claim and not because of any legitimate business requirement.
18. Plaintiff's trial return to work with defendant on 20 May 1997 was unsuccessful and thus the presumption of continuing disability afforded by the Form 60 was not rebutted. Additionally, even if the burden had been on the plaintiff of proving continuing disability, he has done so by the medical evidence, his efforts at finding work, and his inability to earn his pre-injury wages because of his compensable injury.
19. This appeal was brought by the insurance company and the Full Commission by this Opinion and Award orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee. It is reasonable under the circumstances of this case, therefore, for the Industrial Commission to tax plaintiff's attorney fee for the appeal against the defendant pursuant to N.C. Gen. Stat. §97-88. A reasonable fee for plaintiff's attorney for the appeal would be $1,000.00.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to his back arising out of and in the course of his employment and as a direct result of a specific traumatic incident of the work assigned on 6 April 1997. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's loss of earning capacity from his inability to find or hold other employment of any kind or other employment at a wage comparable to that earned prior to his admittedly compensable injury by accident is due to his 6 April 1997 work-related admittedly compensable injury by accident rather than any refusal to continue his employment with the defendant on 20 May 1997.
3. As a result of his compensable injury on 6 April 1997, plaintiff is entitled to temporary total disability compensation at a rate of $250.13 from 18 June 1997 and continuing thereafter until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have the defendants pay all of plaintiff's medical expenses incurred or to be incurred by plaintiff as a result of his admittedly compensable injury of 6 April 1997 for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
5. Since this appeal was brought by the insurance company and the Full Commission by this Opinion and Award orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, it is reasonable under the circumstances of this case for the Industrial Commission to tax plaintiff's attorney fee for the appeal against the defendant pursuant to N.C. Gen. Stat. §97-88.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, plaintiff is entitled to have the defendants pay plaintiff temporary total disability compensation at the rate of $250.13 per week from 18 June 1997 until plaintiff returns to work or until further order of the Commission. Amounts which have accrued shall be paid to plaintiff in a lump sum. Interest at the rate of 8 percent per year shall be paid on all outstanding amounts from 18 March 1998, the date of the hearing before the Deputy Commissioner, until paid. Defendant is entitled to a credit for all wages earned by plaintiff from and after 18 June 1997 as well as for any unemployment benefits received.
2. Plaintiff is entitled to have the defendants pay all medical expenses incurred, or to be incurred, by plaintiff as a result of his admittedly compensable injury on April 6, 1997, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability, when bills for the same shall have been submitted through the defendant-carrier to the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation benefits due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel. Consideration and designation of this attorney's fee contemplates that counsel for plaintiff shall continue and is hereby ORDERED to monitor the submission of medical expenses to defendants.
4. Defendant shall also pay a reasonable attorney fee of $1,000.00 to plaintiff's attorney pursuant to N.C. Gen. Stat. § 97-88.
5. Defendant shall pay the costs, including an expert witness fee to Dr. Hendrix of $235.00.
This 16th day of June 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ BERNADINE S. BALLANCE COMMISSIONER